UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHERIE LYNN CHRISTINA,

                                          Plaintiff,

                    -vs-                                              12-CV-963C

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

                                          Defendant.

_____


        Plaintiff Sherie Lynn Christina initiated this action pursuant to Section 405(g) of the

Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the

Commissioner of Social Security (the "Commissioner") denying plaintiff's application for

Supplemental Security Income ("SSI") benefits.  The Commissioner has filed a motion for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

(Item 9) and plaintiff has filed a cross motion requesting the same relief (Item 10).  For the

following reasons, the Commissioner's motion is granted and plaintiff's cross motion is

denied.


## BACKGROUND

        Plaintiff was born on February 18, 1965 (Tr. 137 ).[2]   She applied for SSI on April

23, 2009, alleging disability as of January 1, 2006 due to pain, depression, and anxiety (Tr.

_____

        [1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Astrue as defendant in this
case and no further action need be taken.  *See* 42 U.S.C. § 405(g).

        [2]  References preceded by "Tr." are to page numbers of the administrative record, filed by
defendant as part of the answer to the complaint (Item 6).

170).   Plaintiff's application was denied on September 16, 2009 (Tr. 86-89).   Upon reconsideration, the application was again denied on July 7, 2010 (Tr. 90-92).  Plaintiff then requested a hearing, which was held on May 12, 2011 before Administrative Law Judge ("ALJ") Steven J. Ehlenbeck (Tr. 51-83).   Plaintiff testified at the hearing and was represented by counsel.

By decision dated July 14, 2011, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 32-40).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Plaintiff then filed this action on October 12, 2012, pursuant to the judicial review provision of 42 U.S.C. § 405(g).  On June 7, 2013, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld because it is supported by substantial evidence in the record (*see* Item 9).  Plaintiff cross-moved for judgment on the pleadings, arguing that the ALJ erred in not finding her disabled (Item 10).  The Commissioner filed a response on July 8, 2013 (Item 13), and plaintiff declined to file a response.

## DISCUSSION

### I.  Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined

2

as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II. Standard for Determining Eligibility for Disability Benefits

To be eligible for Disability Insurance benefits and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be

3

expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See* *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. §§ 404.1520(g), 416.920(g).

4

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[3] However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since April 23, 2009, the date she applied for benefits (Tr. 34). Upon review of plaintiff's medical records and hearing testimony, the ALJ found that plaintiff has severe impairments, including bipolar disorder and anxiety disorder, but that these impairments were not of sufficient severity to meet or equal any of the impairments in the Listings (Tr. 35-36). The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with a non-exertional limitation to unskilled work with no fast-paced production requirements (Tr. 36). Considering plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs in significant numbers in the national economy that plaintiff could perform (Tr. 39). Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy. *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

Social Security Act at any time from April 23, 2009 through the date of the decision (Tr. 39-40).

### III.  The Medical Record

Plaintiff's medical records indicate a history of anxiety, depression, and panic attacks (Tr. 198-229).   On August 30, 2009, plaintiff went to the emergency room at Northside Hospital complaining of restless legs that contributed to insomnia and anxiety (Tr. 282-93).   She was given Valium, Ativan, and Requip and was released in stable condition.  *Id.*

Plaintiff underwent a consultative psychological examination by David Rush, Ph.D. on August 13, 2009.  Dr. Rush diagnosed bipolar disorder, moderate, and anxiety disorder (Tr. 233).  Dr. Rush noted that plaintiff functioned in the low average range of general intellectual abilities.  *Id.*  He further noted that plaintiff could understand, remember, and carry out simple as well as complex instructions, but that her ability to carry out complex instructions may be compromised when she is in a highly anxious state (Tr. 234).  Plaintiff is able to get along with the public and with co-workers, and is able to sustain focused attention, although that ability may be compromised by a high level of anxiety.  *Id.*  Dr. Rush concluded that, in her present psychological state, plaintiff is "likely to experience difficulty adhering to a work schedule or production norms on a consistent basis." (Tr. 234). He further opined that under stressful situations, plaintiff is "likely to decompensate quickly by becoming nervous, withdrawn, and frustrated."  *Id.*

On September 14, 2009, the medical record was reviewed by Morgan Kyle, PsyD.

Dr. Kyle opined that plaintiff had mild restrictions in activities of daily living and maintaining social functioning (Tr. 245).  She had moderate difficulties in maintaining concentration and persistence of pace, with no episodes of decompensation.  *Id.*  Dr. Kyle stated that plaintiff's attention and concentration would be variable and that she would require supervision and support, but that plaintiff was not substantially limited in her ability to perform work-related activities (Tr. 251).

Plaintiff received care at the North DeKalb Grady Health Center from Dr. Xuexin Tang.  On March 29, 2010, plaintiff complained of joint pain, yet upon examination, her range of motion in all joints was satisfactory and there was no evidence of swelling or tenderness (Tr. 309).  On June 23, 2010 plaintiff complained of a cough (Tr. 304).  Visits in August, October, and November 2010 were related to her anxiety (Tr. 297-303).  On October 20, 2010, plaintiff reported that Xanax is the only medication that helped her anxiety (Tr. 301).  In November 2010, plaintiff reported to Dr. Tang that Grady denied her mental health treatment because her symptoms were "too mild" (Tr. 297).  Dr. Tang refilled plaintiff's prescription for Xanax (Tr. 297-98).  In March 2011, plaintiff complained of a sore throat and was prescribed an antibiotic (Tr. 295-96).  In October 2011, plaintiff underwent an MRI of the lumbar spine which showed degenerative changes in the lower three disc levels, minimal narrowing of the spinal canal, and L5 - S1 central disc protrusion that mildly bordered the S1 nerve root with facet arthropathy (Tr. 372).  The results of the MRI were submitted to the Appeals Council after the ALJ issued his decision.

**IV. Hearing Testimony**

At the administrative hearing, plaintiff testified that she cannot get out of bed because she cannot sleep due to nightmares and anxiety (Tr. 58). She has panic attacks on a daily basis which cause pain in her chest, arms, and legs (Tr. 62). She has no medical insurance and has been unable to receive therapy on a regular basis (Tr. 61).

The ALJ posed a hypothetical wherein a person of plaintiff's age, with a high school education and limited work experience, was able to perform work at all exertional levels with limitations for unskilled work with no fact-paced production requirements. The Vocational Expert ("VE") testified that such a person would be qualified for several jobs in the regional and national economy. Those positions include "linen grader," a light, unskilled position with an SVP[4] rating of 2 and 65,000 jobs in the national economy; hotel housekeeper, a light, unskilled position with an SVP of 2 and 450,000 jobs in the national economy; and "silverware wrapper," a light, unskilled job with an SVP of 1 and 15,000 jobs in the national economy (Tr. 81).[5]

The VE further testified that if the hypothetical worker was late for work three times per week or absent from work three times per month, it would "eventually result in her being able not to sustain employment" (Tr. 82-83).

---

[4]  "SVP" stands for "specific vocational preparation," and refers to the amount of time it takes an individual to learn to do a given job. *Diakogiannis v. Astrue,* 2013 WL 5473478, n. 6 (W.D.N.Y. Sept. 30, 2013). Unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9. Social Security Ruling ("SSR") 00–4p, 2000 WL 1898704, *3 (Dec. 4, 2000).

[5]  While the VE testified as to jobs in the regional economy, this information is not material, as the hearing took place in Atlanta, Georgia. Plaintiff now resides in the Western New York area.

**V.  The ALJ's Evaluation of Plaintiff's Residual Functional Capacity**

In support of her motion, plaintiff argues that the ALJ's assessment of her mental RFC is not supported by substantial evidence.  Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*  Here, the ALJ found that plaintiff was capable of performing work at all exertional levels with a non-exertional limitation to unskilled work with no fast-paced production requirements (Tr. 36).

Plaintiff argues that the ALJ did not account for plaintiff's difficulties in maintaining a schedule and coping with the demands of work.  In his decision, the ALJ evaluated the opinion of consultative examiner ("CE") Dr. Rush, who concluded that plaintiff would likely have difficulty adhering to a work schedule in her present psychological state.  The ALJ found that Dr. Rush underestimated plaintiff's functional ability, as his conclusion was based solely on plaintiff's reported inability to get up for work on time, an inability that was inconsistent with other statements she made to Dr. Rush regarding insomnia, mania, and an inability to sleep (Tr. 37-38).  Additionally, plaintiff reported to Dr. Rush that she typically rose at 9:00 a.m., spent her day doing chores and watching television, and retired at midnight (Tr. 232).  She also told Dr. Rush that she took her medication "as needed," rather than as prescribed, and the prospect of a panic attack did not prevent her from venturing outside her home (Tr. 231).  The ALJ recognized Dr. Kyle's conclusions that

9

plaintiff would require periodic supervision to sustain an ordinary routine, would have periodic deficits in concentration and attention, and would require additional time and support in the workplace (Tr. 36).  In concluding that plaintiff was limited in her ability to conform to fast-paced production requirements, the ALJ addressed plaintiff's ability to maintain a schedule and cope with the demands of work.

Additionally, plaintiff argues that the ALJ made no function-by-function findings regarding the mental demands of work.  Mental work-related functions include understanding, remembering, carrying out instructions, and responding appropriately to supervision.  *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citing 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p, 1996 WL 374184 at *5–6 (July 2, 1996)).  An ALJ's failure to express a claimant's RFC in a function-by-function analysis does not necessarily mandate remand, so long as the residual functional capacity determination is set forth with sufficient specificity to permit the court to decide whether it is supported by substantial evidence.  *See id.* at 177; *Darby v. Colvin,* 2013 WL 5291113, *4 (Sept. 18, 2013); *Campbell v. Astrue*, 465 F. App'x 4, 6 (2d Cir. 2012) (summary order) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

Here, while the ALJ did not conduct a specific function-by-function analysis of plaintiff's mental capabilities, he discussed the medical records and the testimony as it pertained to those capabilities, including the fact that plaintiff would require periodic supervision, would have periodic deficits in concentration and attention, and would require additional time and support to adapt to changes in the work setting (Tr. 38).  He noted her mild difficulties in activities of daily living and social functioning, and moderate difficulties in concentration, persistence, or pace.  After reviewing the evidence, the ALJ determined

10

that plaintiff was able to perform a full range of work, with no fast-paced production requirements (Tr. 36).   Accordingly, although the ALJ did not conduct a function-by-function assessment, the court concludes that the ALJ adequately discussed plaintiff's mental capabilities and work-related functions and limitations and that the RFC assessment is supported by substantial evidence.  *See Carrigan v. Astrue*, 2011 WL 4372651, *7–8 (D.Vt. Aug. 26, 2011) (failure to conduct function-by-function assessment of mental capabilities harmless where ALJ's decision discussed the claimant's work-related functions and limitations and where substantial evidence supported RFC assessment), *Report and Recommendation adopted*, 2011 WL 4372494 (D.Vt. Sept. 19, 2011).

Plaintiff further argues that since she testified regarding pain as result of her anxiety, the ALJ was under an obligation to develop the record further in this respect and to elicit an opinion from one of her treating physicians regarding her exertional limitations. Although the ALJ has an affirmative duty to develop the record, the ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to support that conclusion under the applicable standard.  *Rosa v. Callahan*, 168 F.3d at 79 n. 5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citations omitted).   Here, The ALJ found that plaintiff's severe impairments were mental - bipolar disorder and anxiety disorder.  Plaintiff offered no medical evidence of a physical impairment that would limit her ability to perform work related activities during the relevant time period.   The administrative record contains multiple years of treatment notes and records, reports of plaintiff's treating providers, and

assessments by consultative examiners.   The medical records indicate that physical examinations of plaintiff were unremarkable, that plaintiff was not physically impaired, and that her difficulties are psychological in nature.   The MRI, which indicated only minimal narrowing of the spinal canal and mild protrusion at L5-S1, was conducted on October 18, 2011, three months after the ALJ's decision.   Even if they indicated a severe impairment, which is not apparent from the record, the MRI results are not related to the relevant time period. Having reviewed the medical record, the court finds that the objective medical evidence is fully supportive of the ALJ's RFC determination and the ALJ was under no further obligation to develop the record.


## VI.  The ALJ's Credibility Assessment

Plaintiff argues that the ALJ erred by basing his credibility assessment solely on his own RFC findings.  Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims and must be thoroughly considered.  If a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony.  *See Brandon v. Bowen*, 666 F.Supp. 604, 609 (S.D.N.Y. 1987).  However, subjective symptomatology by itself cannot be the basis for a finding of disability.  *Brown v. Colvin,* 2013 WL 3384172, *8 (N.D.N.Y. July 8, 2013).  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Having found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible (Tr. 37). Specifically, the ALJ found that plaintiff's activities of daily living, caring for herself and her four cats, driving, shopping, and preparing light meals, were inconsistent with her alleged inability to work in any setting. Additionally, plaintiff's inconsistent statements undermined her credibility. Plaintiff worked sporadically as a dancer for years, yet claimed that she was unable to function around people. She alleges complete disability as a result of mental health issues, yet she chose not to take advantage of mental health services, taking medication only "as needed," and not visiting a certain clinic because she did not like the medications prescribed there (Tr. 354, 365). Upon a review of the record, the court finds no reversible error in the ALJ's evaluation of plaintiff's credibility.

## VII. The ALJ's Assessment of the Vocational Testimony

Plaintiff argues that, as the RFC was not supported by substantial evidence, the hypothetical based on this RFC and posed to the VE  was not complete and accurate. Consequently, she contends that the ALJ erred in relying on the VE's testimony based on this hypothetical. As the court finds that the ALJ's assessment of plaintiff's RFC was supported by substantial evidence, the hypothetical was accurate and the ALJ did not err in relying on the VE's testimony based on that hypothetical.

## <u>CONCLUSION</u>

The Commissioner's determination that plaintiff is not disabled is supported by substantial evidence in the record.  The Commissioner's motion for judgment on the pleadings (Item 9) is granted and the plaintiff's cross motion (Item 10) is denied.  The Clerk of the Court is directed to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   March   26      , 2014